IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

    Plaintiff,

v.                                                   No. CR 12-695 JCH

ROD HARING,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on *Defendant's Motion to Suppress Evidence* ("Motion to Suppress"), filed on October 15, 2012, (Doc. 18); the Government's *Response to Defendant's Motion to Suppress Evidence,* filed on October 30, 2012, (Doc. 20); and *Defendant's Reply to the Government's Response (Doc. 20) to Defendant's Motion to Suppress Evidence*, filed on November 20, 2012, (Doc. 22).  United States District Judge Judith C. Herrera referred the Motion to Suppress to the undersigned to hold a hearing and make a recommendation. (Doc. 19).  After an evidentiary hearing on January 25, 2013, the Government and Defendant each submitted Proposed Findings of Fact and Conclusions of Law.  (Docs. 40 & 41).  In response to an order from this Court, both parties submitted supplemental briefing on the impact of the Supreme Court's ruling in *Bailey v. United States*, 568 U.S. ___, 2013 WL 598438 (U.S.) (2013), on the Motion to Suppress.  (Docs. 44 & 47).

    **I.**    **Background**

The facts of this case are largely undisputed.  Shortly before December 9, 2011, Detective Sean Higdon, of the Albuquerque Police Department, was contacted by a confidential informant with whom he had worked in the past.  (Doc. 41 at 1-2).  The

confidential informant told Detective Higdon that he could purchase methamphetamine from a white male in his fifties whom the informant knew as Rod at a residence on Propps Street.  (Doc. 41 at 2; Hearing Transcript ("Tr.") at 12, 22).  The confidential informant performed a controlled buy of methamphetamine from the home at 1630 Propps Street.  (Tr. at 5).  Within 72 hours of the controlled buy, Detective Higdon obtained a search warrant from state District Court Judge Charles Brown.  (Doc. 20-1).

The search warrant was issued on December 9, 2011.  (Doc. 20-1 at 1).  The search warrant contains Defendant's name, date of birth, and social security number, as well as the address of the home on Propps Street.  (*Id.*).  Detective Higdon submitted an affidavit outlining the probable cause for the search warrant that satisfied Judge Brown that "the person named/described and/or property described in the Affidavit are located where alleged in the Affidavit."  (*Id.*).  The affidavit was attached to the search warrant and "made a part of [the] Search Warrant."  (*Id.*).

In the affidavit and his testimony, Detective Higdon explained that a confidential informant provided extensive information during parts of the investigation.  (Tr. at 12-13; Doc. 20-1 at 3).  He also explained that the confidential informant had proven "Itself" knowledgeable with the activities surrounding controlled substances and information received from the confidential informant had resulted in valuable intelligence.  (Doc. 20-1 at 3-4).

Detective Higdon testified that, based on information provided by the confidential informant about "Rod's" last name, he was able to find a photograph of Rod Haring through the New Mexico Motor Vehicle Department.  (Tr. at 15-16).  Using that photograph, the informant confirmed Mr. Haring's identity.  (*Id.* at 16).  Detective Higdon

also testified that the confidential informant had told him that Mr. Haring drove the white van that Detective Higdon had observed at the residence on Propps Street. (*Id.* at 17).

The search warrant was served on the property on December 12, 2011. (Doc. 40 at 2). At some point before beginning the operation to serve the warrant, Detective Higdon decided to wait until Mr. Haring left the residence to execute the search warrant. (Doc. 41 at 3; Doc. 40 at 3). Detective Higdon felt that it would be dangerous to serve the warrant while Mr. Haring was present because the confidential informant had told him that the residents of the home possessed firearms that they often discharged in the back yard and there was a cinder block wall to pass before reaching the front door. (Doc. 40 at 3; Doc. 41 at 4).

Detective Higdon and other officers from the Albuquerque Police Department observed the residence for approximately two hours on December 12, 2011 before serving the search warrant. (Doc. 40 at 3; Tr. at 5, 23). During this surveillance, the detectives noticed Mr. Haring leave the residence driving a white General Motors 1988 van, a vehicle that Detective Higdon had observed at the residence throughout the investigation. (Tr. at 5, 31-32, 36, 52). The van drove north on Propps Street, then east on Haines, and then south on Morris Street. (*Id.* at 52-53). The detectives followed the van, which did not make any stops or commit any traffic violations, for approximately eight-tenths of a mile. (Doc. 40 at 4, Tr. at 5-6, 37).

Detectives Randy Rogers and Castillo waited near the Propps Street residence while Detective Higdon observed it. (Tr. at 35). Their responsibility was to conduct a traffic stop on the vehicle that would be leaving the residence when directed to do so by Detective Higdon. (*Id.* at 35). Before conducting the traffic stop, Detectives Rogers and Castillo had been advised that Mr. Haring might be carrying firearms with him. (*Id.* at 37). Detectives

Rogers and Castillo stopped the van in a parking lot near an elementary school. (*Id.*). The detectives had Mr. Haring exit his van and handcuffed him.[1]  The detectives patted him down and found two pocket knives and a gun in Mr. Haring's pockets. (*Id.* at 38-39). A third detective then arrived at the scene and began to search the van. (*Id.* at 48). A black leather bag containing methamphetamine, marijuana, individually bagged prescription pills, a digital scale, and packing materials was discovered in the van. (Doc. 40 at 5). About thirty minutes after being stopped, Mr. Haring was taken back to 1630 Propps Street, where the search of the property was underway. (Tr. at 39, 40, 52).

On March 28, 2012, Mr. Haring was charged in an Indictment with possession of more than five grams of methamphetamine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); maintaining a residence for the purpose of distributing methamphetamine, in violation of 21 U.S.C. § 856(a)(1) and (b); possession of a firearm during and in relation to a drug crime, in violation of 18 U.S.C. § 924(c), and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 2).

**II.    Analysis**

Defendant asserts that the evidence found on his person and in his vehicle was seized without a warrant and without sufficient probable cause to justify a search without a warrant. (Doc. 18 at 1). He contends that the search warrant did not authorize a search of Defendant and his vehicle beyond the Propps Street residence. (Doc. 18 at 4). Defendant also argues that the information that the detectives had about Defendant was incomplete and did not provide probable cause to search or arrest him. (Doc. 41 at 12-13).

---

[1] Defendant proffered this version of events at the evidentiary hearing and the Government accepted it. However, Detective Rogers testified that Mr. Haring was handcuffed after he was patted down and the knives and gun were found. (Tr. at 38-39).

The Government asserts that Defendant's arrest and the seizure of evidence from his person and vehicle were proper under several legal theories. The Government asserts that the detectives had a good faith belief that the warrant authorized the search of Defendant's person and vehicle. (Doc. 20 at 7-10). Alternatively, the Government argues that the detectives had probable cause to stop and arrest Defendant and, as a result of that arrest, the evidence would have been inevitably discovered. (Doc. 44 at 3-4). Additionally, the Government contends that the search warrant described Defendant and his vehicle with particularity and explicitly authorized the search that uncovered the evidence. (Doc. 20 at 4-7). As part of this argument, the Government initially asserted that the search of Defendant eight-tenths of a mile from his home was reasonable under *Michigan v. Summers*, 452 U.S. 692 (1981). (Doc. 40 at 8-14). However, in light of the Supreme Court's recent decision in *Bailey*, all parties agree that *Summers* no longer supports the reasonableness of the detention of Defendant eight-tenths of a mile from the Propps Street residence. (Doc. 44 at 2-3; Doc. 47 at 1). While the Government maintains that the terms of the search warrant explicitly authorize the search of Defendant and his vehicle, Defendant argues that "in light of the Supreme Court decision in *Bailey*, the detention and search in this case can only be sanctioned if this Honorable Court concludes that officers had probable cause to arrest Mr. Haring (or reasonable suspicion to detain him). . . ." (Doc. 47 at 1-2; Doc. 44 at 3).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. While the Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized," it does not prohibit

warrantless arrests based on probable cause. U.S. Const. amend. IV; *United States v. Zamudio-Carillo*, 499 F.3d 1206, 1209 (10th Cir. 2007).

Probable cause to arrest exists when the "facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Edwards,* 632 F.3d 633, 639 (10th Cir. 2001)(internal quotations omitted). While more than mere suspicion is required, probable cause does not require facts sufficient for a finding of guilt. *See United States v. Morris*, 247 F.3d 1080, 1088 (10th Cir. 2001). Probable cause is measured by the objective standard of whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information he or she possessed. *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964); *United States v. Valenzuela*, 365 F. 3d 892, 896-97 (10th Cir. 2004). A court considers the totality of the circumstances when determining the existence of probable cause, particularly because "probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). When an officer acquires information from a confidential informant, the reliability and veracity of the informant is considered when determining whether the information is a trustworthy basis for probable cause. *See id*. at 232-33.

The collective knowledge of all officers involved in the investigation may provide a basis for probable cause, even where the arresting officer has more limited information. *See Zamudio-Carillo*, 499 F.3d at 1209. Two categories of collective knowledge exist under the "collective knowledge" doctrine: vertical and horizontal. United States v. Chavez, 534 F.3d 1338, 1345 (10th Cir. 2008). Horizontal collective knowledge exists where several officers individually possess pieces of information that combine to provide

probable cause; vertical collective knowledge exists when one officer has probable cause and directs another to act without communicating all of the information that would justify the action. *Id.* at 1345. The Tenth Circuit has held that information sufficient to provide probable cause can be imputed vertically from the officer with the knowledge to the officer who is directed to act. *Id.* at 1347-48.

Defendant argues that the detectives lacked probable cause to arrest Defendant because the confidential informant did not: provide a detailed physical description of Defendant; inform Detective Higdon that other people lived at the Propps Street residence; or mention that the man who sold the drugs drove a white van. However, Detective Higdon testified that the confidential informant did tell him that "Rod" drove the white van that the detective had observed outside the home at the time of the controlled buy and during the surveillance of the home. (Tr. at 17). He also testified that he had used the informant in the past. (*Id.* at 12). Additionally, Detective Higdon explained that he used a photograph from the New Mexico Motor Vehicle Department to confirm Defendant's identity with the confidential informant. (*Id.* at 16). The photographic confirmation by the informant eliminates any deficiencies that the initial vague description may have presented. Considering that the confidential informant had previously proven itself reliable, had confirmed Defendant's identity with the Motor Vehicle Department's photograph, and had purchased methamphetamine from Defendant within days of Defendant's arrest, a reasonable officer would believe that probable cause existed for his arrest without a warrant.

To the extent that Defendant challenges Defendant's arrest because Detectives Castillo and Rogers, and not Detective Higdon, actually made the arrest, the Court finds that Detective Higdon's knowledge can be imputed to the arresting detectives. Detectives

Rogers and Castillo had been briefed about the operation and, from the outset, were delegated the responsibility of stopping Defendant when he left 1630 Propps Street. (Tr. at 35-37). Although it is not clear whether Detectives Rogers and Castillo were briefed on all of the information that provided probable cause to arrest Defendant, they were informed that Defendant could be in possession of a weapon and that a search warrant was being executed. (*Id.* at 37). Any knowledge that they lacked as to the specifics can be imputed based on Detective Higdon's knowledge and specific direction for them to act. *See Chavez*, 534 F.3d at 1347-48. Based on the totality of the circumstances, the detectives had probable cause to arrest Defendant. Moreover, under the inevitable discovery doctrine, the evidence found in the van would have been discovered in an inventory search once Defendant was arrested. *See United States v. Ibarra*, 955 F.2d 1405, 1410 (10th Cir. 1992).

In his Supplemental Brief, Defendant contends that the Supreme Court "cautioned against giving law enforcement officers <u>blanket</u> authority to detain or arrest anyone associated with the residence wherever that person could be found based solely on the allegations in a search warrant affidavit. . . ." (Doc. 47 at 5-6) (citing *Bailey*, 2013 WL 598438, at *6, *9, *10) (emphasis in original). The Court emphasizes that the analysis above determines that a basis for probable cause to arrest Defendant existed independently from the search warrant. Although the allegations in the affidavit supporting the search warrant are substantively similar to those that provide the basis for probable cause in this case, the arrest was supported by probable cause whether a search warrant was issued or not. The arresting detectives had trustworthy information that Defendant had engaged in criminal activity and, therefore, they had probable cause to arrest him.

The Court does not discuss the Government's arguments that the warrant explicitly authorized the search of Defendant and his vehicle that uncovered the evidence or that detectives' good faith belief that the warrant authorized the search because probable cause to arrest Defendant existed independently of the search warrant.

### III.   Conclusion

For the reasons discussed above, the Court **RECOMMENDS** that *Defendant's Motion to Suppress Evidence* be **DENIED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE